# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DEWAYNE CARROLL, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:11-cv-03111-MHH |
| OFFICE DEPOT, INC., | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff DeWayne Carroll is a former employee of defendant Office Depot. Mr. Carroll is African American and is legally blind because of a hereditary eye condition. Mr. Carroll began working for Office Depot in 1993. Initially, he was a stocker. Office Depot promoted him to the position of department manager in 2005.[1] Five years later, Mr. Carroll applied for the position of assistant store manager. Office Depot did not promote Mr. Carroll. Instead, Office Depot hired Darren DeLoach, a white, non-disabled male who had not previously worked for Office Depot. Mr. Carroll claims that Office Depot decided not to promote him either because of his disability or because of his race. On the basis of this conduct, Mr. Carroll asserts claims against Office Depot for disability and race discrimination.

---

[1] (Doc. 20-2, pp. 3-4).

1

Mr. Carroll also contends that Office Depot violated the Family Medical Leave Act.  In May of 2011, Mr. Carroll took a leave of absence for the birth of his child.  He alleges that when he returned from leave, Office Depot reassigned him from the technology area of the store in which he worked to the less-desirable office supplies area.  Mr. Carroll asserts that the reassignment violated his right under the FMLA to be restored to the position he held when he went on FMLA leave.

Pursuant to Federal Rule of Civil Procedure 56, Office Depot asks the Court to enter judgment in the company's favor on Mr. Carroll's ADA, Title VII, § 1981, and FMLA claims.  (Doc. 18).  For the reasons stated below, the Court grants Office Depot's motion for summary judgment.

## I.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ.

P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Although the Court has not had the pleasure of meeting him, based on the record, the Court surmises that Mr. Carroll is a remarkable individual. He has a hereditary eye condition that has caused him to be legally blind. (Doc. 20-2, p. 17). As a result, Mr. Carroll is unable to drive, and he must hold documents very close to his face to be able to read. (Doc. 20-2, pp. 17, 121).

Mr. Carroll's visual impairment has not hampered his ability to work. Office Depot hired him in 1993. Initially, Mr. Carroll worked in Office Depot's Festival Shopping Center store. (Doc. 50, p. 12). Sometime after 2007, Office Depot transferred Mr. Carroll to its Eastwood store. Mr. Carroll worked there until 2012. (Doc. 20-3, p. 12; Doc. 50, pp. 17, 22). Mr. Carroll's co-workers and managers were aware of his disability. (Doc. 20-3, p. 19).

Both store managers and Office Depot customers were fond of Mr. Carroll. (Doc. 20-3, p. 39). Mr. Huizinga, the last store manager with whom Mr. Carroll worked, testified that customers would come into the Eastwood store and ask for

Mr. Carroll by name. In Mr. Huizinga's experience, this happened with Mr. Carroll more often than with any other Office Depot employee. (Doc. 20-3, p. 39). One of Mr. Carroll's co-workers, Stephanie Davis, stated in an affidavit that she "never heard any employee, manager, customer, or anyone make any negative comments about Mr. Carroll." (Doc. 49-16, p. 2).

During his tenure with Office Depot, Mr. Carroll adapted to many changes in store management. In fact, during the dozen or so years that Mr. Carroll worked at Office Depot's Festival Shopping Center location, the store management changed an average of once per year. (Doc. 20-3, p. 47). Despite the resulting high rate of employee turnover, Mr. Carroll stayed with the store. (Doc. 20-3, p. 47). In 2007, Alan Chew was the manager of the Festival store. (Doc. 20-2, p. 8; Doc. 20-3, p. 6). On his last day of work at Office Depot, Mr. Chew told Mr. Carroll that Carroll would never be promoted because he was legally blind. (Doc. 20-2, pp. 18–19).

Rob Huizinga replaced Mr. Chew. At some point after Mr. Huizinga became the manager of the Festival store, Office Depot moved the store to a location in the Eastwood area of Birmingham. (Doc. 19, ¶ 6). Mr. Huizinga and Mr. Carroll worked well together at the Eastwood location. Mr. Huizinga was complimentary of Mr. Carroll's leadership qualities, and he wanted to see Mr. Carroll succeed at Office Depot. (Doc. 20-3, pp. 19, 48). In 2008, Mr. Huizinga

4

nominated Mr. Carroll to participate in Office Depot's Store Leadership Curriculum (SLC). (Doc. 20-2, pp. 7–8; Doc. 20-3, p. 31). Home Depot uses the two-week SLC program to identify and assess potential management candidates. (Doc. 20-3, p. 31). While Mr. Carroll participated in the program, Ms. Stacey Monteleone, a member of Office Depot's regional management team, identified areas in which Mr. Carroll needed to improve before the company would consider him for advancement. (Doc. 20-3, p. 32; Doc. 49-2, p. 5).

In 2009 and 2010, Mr. Huizinga ranked Mr. Carroll's overall performance as "Meets Expectations." (Doc. 49-3; Doc. 49-4; Doc. 49-7). Mr. Huizinga's evaluations pointed out strengths and weaknesses in Mr. Carroll's job performance. (*Id.*). For example, in 2009 Mr. Carroll received high marks for Inventory Evaluation, Profit, Loss Prevention, Integrity, and Inclusion. (Doc. 49-3, pp. 2, 4–5, 7). He received below-average scores for Sales, Grow Services, and Innovation. (Doc. 49-3, pp. 3, 4, 7, 8). In 2010, Mr. Carroll received high marks for EBITDA, Integrity, and Leadership, and he received below-average marks for Selling Services and Innovation. (Doc. 49-4, pp. 3–6). The rest of Mr. Carroll's marks were average. (Doc. 49-4).

In August 2010, Mr. Carroll asked Office Depot to consider him for the position of assistant manager of the Eastwood store. (Doc. 20-2, p. 7). He did not complete a full application; however, Mr. Huizinga understood that Mr. Carroll

5

wanted the job.  (Doc. 20-3, p. 27).  Mr. Huizinga and Ms. Monteleone, the district manager for Carroll's store, met with Mr. Carroll informally to discuss the position.  (Doc. 20-3, p. 22).  After the meeting, Mr. Huizinga and Ms. Monteleone conferred and decided that Mr. Carroll was not ready for a promotion to assistant store manager.  (Doc. 20-3, p. 22).

Office Depot ultimately hired Darren DeLoach to fill the assistant store manager position.  (Doc. 20-3, p. 20).  Mr. DeLoach is a white, non-disabled male who had not worked for Office Depot before he became assistant store manager.  (Doc. 20-3, pp. 20–21, 27).  While Mr. DeLoach trained and learned about his responsibilities as assistant store manager, Mr. Carroll performed one or more of Mr. DeLoach's assistant store manager tasks.  (Doc. 20-2, pp. 23–33; Doc. 20-3, p. 30).

In May 2011, Mr. Carroll took FMLA leave when his second child was born.  (Doc. 20-2, p. 21).  Before he took leave, Mr. Carroll was the manager of the technology department in the Eastwood store.  When Mr. Carroll returned from leave, Office Depot moved him to the office supplies area of the store.  Mr. Carroll's job title, pay, and benefits did not change, but in Mr. Carroll's view, the move was a demotion.  (Doc. 20-2, pp. 21-22).

On October 25, 2010, Mr. Carroll filed a Charge of Discrimination with the EEOC.  (Doc. 49-1).  The EEOC mailed a Dismissal and Notice of Rights to Mr.

Carroll on May 26, 2011.  (Doc. 1, ¶ 8).  Mr. Carroll filed a timely complaint on August 24, 2011.  He asserts claims against Office Depot for disability and race discrimination and for interference with his FMLA rights.  (Doc. 1).  At the close of discovery, Office Depot filed a motion for summary judgment.  (Docs. 18, 19, 50, 51).  Mr. Carroll has opposed the motion, and he moved to strike the declaration of Stacey Monteleone, a declaration that Office Depot offered in support of its summary judgment motion.  (Doc. 50, pp. 4–6).  The Court heard argument from the parties on September 17, 2014.[2]  On this record, the Court considers Office Depot's motion for summary judgment.

### III. ANALYSIS

#### A. Mr. Carroll's ADA Claim

To prevail on his ADA claim, Mr. Carroll must demonstrate that Office Depot discriminated against him.  In this circuit, a plaintiff may prove that an employment action is the product of discrimination either by introducing direct evidence of discrimination or by using circumstantial evidence of discrimination.  *Beatty v. Hudco Indus. Products, Inc.*, 881 F. Supp. 2d 1344, 1351 (N.D. Ala. 2012) (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999)).  Mr.

---

[2] A court reporter was present, and a transcript is available upon request.

Carroll's discrimination claim rests on circumstantial evidence.[3] Therefore, to analyze Mr. Carroll's ADA claim, the Court must employ the burden-shifting analysis that the United States Supreme Court described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Anderson v. Embarq/Sprint*, 379 Fed. Appx. 924, 927 (11th Cir. 2010).

To fulfill the first step of the *McDonnell Douglas* framework, Mr. Carroll must establish a prima facie case of discrimination. This initial proof creates a rebuttable presumption that the employer acted illegally. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer meets this burden, the burden shifts back to the plaintiff to "show that the proffered reasons were pretextual." *Gray v. City of Jacksonville, Fla.*, 492 Fed. Appx. 1, 4 (11th Cir. 2012). For the purposes of summary judgment only, Office Depot concedes that

---

[3] The only potential direct evidence of discriminatory intent in this case is former store manager Alan Chew's alleged statement that Office Depot would never promote Mr. Carroll because Carroll was legally blind. (Doc. 20-2, pp. 18–19). Mr. Chew made this statement on his last day of work in 2007, four years or so before Ms. Monteleone decided not to promote Mr. Carroll. (Doc. 20-2, pp. 18, 20; Doc. 49-5). In this circuit, "'remarks by non-decisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination.'" *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 926 (11th Cir. 2013) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Therefore, Mr. Chew's statement is not direct evidence of discrimination because Mr. Chew did not participate in the decision to hire Mr. DeLoach rather than promote Mr. Carroll to become assistant manager of the Eastwood store. Additionally, the 2007 statement is too far removed from the 2010 hiring decision to raise an inference of intentional discrimination.

Mr. Carroll can establish a *prima facie* case of discrimination based upon a failure to promote. (Doc. 19, p. 14). Therefore, the Court begins its analysis at the second step of the *McDonnell Douglas* framework.

### 1. Office Depot's Legitimate, Non-Discriminatory Reason for Hiring Mr. DeLoach Rather than Promoting Mr. Carroll

As mentioned, Office Depot must articulate a legitimate, nondiscriminatory reason for hiring Mr. DeLoach rather than promoting Mr. Carroll. "[Office Depot]'s burden of rebuttal is exceedingly light . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Gray v. City of Jacksonville, Fla.*, 492 Fed. Appx. 1, 7 (11th Cir. 2012) (internal quotation omitted).

Office Depot asserts that it hired Mr. DeLoach to fill the assistant manager position at the Eastwood store because "both the District Manager and the Store Manager believed that DeLoach was the better qualified candidate." (Doc. 19, p. 14). Mr. Huizinga's deposition supports Office Depot's articulated reason for selecting Mr. DeLoach for the position rather than Mr. Carroll.

> Q: And you and Stacey [Monteleone] agreed that that was not – [Mr. Carroll] was not ready for the position; is that correct?
>
> A: Correct.

(Doc. 49-11, p. 23).

> Q: Did you agree with the decision that [Mr. Carroll] not get that promotion in August 2010?
>
> A: Ultimately, with everything going on, yeah, I did.
>
> Q: And tell us why you agreed with that.
>
> A: We had -- I may have mentioned this earlier, had a store visit from the regional vice president which caused my manager to have to make frequent visits. I had just my -- had my evaluation, which overall was a needs improvement. I got written up for it. The company seemed to have shift (sic) to a whole new level of -- of perfection that was very hard on myself and the store. And just kind of looking back on -- on everything that's happened and -- and kind of looking for the future, it would have been hard for me to promote DeWayne with -- with everything transitioning, you know, with -- with the way Office Depot was going.

(Doc. 49-11, p. 49).

Based on this evidence, Office Depot has carried its burden of providing a legitimate, nondiscriminatory reason for hiring Mr. DeLoach rather than promoting Mr. Carroll.

### 2. Pretext

Because Office Depot has articulated a legitimate reason for not promoting Mr. Carroll, the burden shifts back to Mr. Carroll to show that Office Depot's reason was a pretext for discriminatory conduct. "In the context of a promotion, 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.'" *Springer*

*v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotations omitted)).  Rather, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer*, 509 F.3d at 1349 (internal quotations omitted).  Mr. Carroll cannot meet this rigorous burden.

It is clear from the record that Mr. Carroll was well liked by his peers and by customers.  There were good reasons for Office Depot to consider him for the assistant store manager position.  Still, on the record before the Court – a record which includes inconsistent reviews from Mr. Huizinga and mediocre reports from the Store Leadership Curriculum (*see* pp. 4–5 above) – the Court cannot conclude that Mr. Carroll's evidence regarding his qualifications for the position is such that no reasonable person, in the exercise of impartial judgment, could have chosen Mr. DeLoach over Mr. Carroll for the position.  Although Mr. DeLoach had no prior work history with Office Depot when the company hired him as the assistant manager of the Eastwood store, he had a degree in management from Auburn University. (Doc. 49-5).  Mr. DeLoach co-owned and managed a family restaurant for several years. (Doc. 49-5).  Additionally, Mr. DeLoach had experience as a

branch manager for a bank and as a sales representative for a mortgage company. (Doc. 49-5). The qualifications of the two candidates are very different, and the evidence suggests that both Mr. DeLoach and Mr. Carroll were at least somewhat qualified for the assistant store manager position. Therefore, Mr. Carroll has not presented evidence that would enable him to establish before a factfinder that no reasonable person would have chosen Mr. DeLoach as assistant store manager rather than Mr. Carroll.

Citing *Clayton v. Golden Bird Acquisition, LLC*, 2014 WL 3543693 (N.D. Ala. July 17, 2014), Mr. Carroll argues that he may establish pretext by demonstrating that Office Depot gave the EEOC false information. (Doc. 50, p. 26). Mr. Carroll's argument fails factually and legally.

Factually, there is no evidence that Office Depot misrepresented information to the EEOC. In its EEOC position statement, Office Depot highlighted portions of Mr. Carroll's 2009 and 2010 reviews that mentioned areas in which Mr. Carroll could improve; the company did not draw attention to the portions of the reviews in which Mr. Huizinga gave Mr. Carroll high ratings. Still, the company appears to have attached the complete reviews to its position statement, so Mr. Carroll cannot support his assertion that Office Depot withheld information from the EEOC. (*See* Doc. 49-2, pp. 5-6, citing Attachments G & H).

Legally, Office Depot's decision to focus in its position statement on areas in which Mr. Carroll needed to improve is a far cry from the conduct that gave rise to a question of fact concerning pretext in *Clayton*. In *Clayton*, the Court found that, "in its correspondence with the EEOC, defendant's factual postulates" were "outlandish" and that "[d]efendant's fast-and-loose treatment of the facts continues in its briefs before this court."[4] *Clayton*, 2014 WL 3543693 at *5–6. This Court acknowledges that an employer's conduct before the EEOC may give rise to a question of fact concerning pretext; however, the record in Mr. Carroll's case contains no evidence that Office Depot misrepresented information to the EEOC in the company's position statement.

Mr. Carroll also attempts to establish pretext by stating that Office Depot "fail[ed] to follow its practice of promoting from within." (Doc. 50, p. 25). "An employer's violation of its own normal hiring procedure may be evidence of pretext." *Adams v. Fulton Cnty., Ga.*, 397 Fed. Appx. 611, 613 (11th Cir. 2010) (citation omitted). While Office Depot encourages its employees to apply for promotion and provides the Store Leadership Curriculum for employees who are interested in advancement, Office Depot does not have a policy that automatically

---

[4] One example from *Clayton* is the defendant's statement to the EEOC that the plaintiff never expressed interest in a particular position. 2014 WL 3543693, at *6. The Court stated, "[t]he record is clear that plaintiff expressed interest in the . . . position early and often, to just about anyone who would listen." *Id.* The Court also pointed to testimony from two co-workers that unequivocally corroborated this fact. *Id.*

gives preference to existing employees in promotional decisions. (*See* Doc. 20-3, p. 26; *see also* Doc. 49-2, p. 4 ("Because Office Depot believes its associates are a valuable resource, Office Depot selects the most qualified candidates for promotional opportunities whenever possible")). Therefore, Office Depot's decision to hire from outside of the company is not evidence of pretext.

Because there is no disputed issue of fact for a jury to resolve with respect to Mr. Carroll's ADA claim, the Court grants Office Depot's motion for summary judgment on this claim.

### B.     Mr. Carroll's Title VII and § 1981 Race Discrimination Claims

The Court analyzes Mr. Carroll's Title VII and § 1981 race discrimination claims under the *McDonnell Douglas* burden-shifting framework. *See McCray v. Wal-Mart Stores, Inc.*, 377 Fed. Appx. 921, 923 (11th Cir. 2010) ("Both § 1981 and Title VII are subject to the same standards of proof and employ the same analytical framework.") (internal quotation omitted). To prevail on a claim for race discrimination, a plaintiff must show that his race "was a motivating factor" for an employment decision. 42 U.S.C. § 2000e–2(m). As noted on the record at the hearing in this matter, Mr. Carroll has not provided evidence that Office Depot's decision not to promote him was motivated by race. Therefore, the Court grants summary judgment on Mr. Carroll's Title VII and § 1981 race discrimination claims.

### C. Mr. Carroll's FMLA Claim

"In order to state an interference claim under the FMLA, an employee need only demonstrate by a preponderance of the evidence that he was entitled to a benefit that the employer denied." *Jarvela v. Crete Carrier Co.*, 754 F.3d 1283, 1289 (11th Cir. 2014) (citing *Strickland v. Water Works and Sewer Bd. Of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001)). The FMLA provides that following protected leave, an employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). "An equivalent position is 'virtually identical' to the employee's original position, and the position 'must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.'" *Rodriguez v. Univ. of Miami Hosp.*, 499 Fed. Appx. 920, 922 (11th Cir. 2012) (quoting 29 C.F.R. § 825.215(a)).

Mr. Carroll claims that after his FMLA leave, Office Depot reassigned him from the technology department to the less-desirable supplies department. (Doc. 20-2, p. 21). The declaration of Office Depot's Senior Human Resources Generalist, LaTonya Rampa, states that at Office Depot, "[a]ll Department Managers have the same title and are expected to assist throughout the store."

(Doc. 20-6, ¶ 2). When Mr. Carroll returned from leave, his pay, benefits, and job title were the same as they were before his leave. (Doc. 20-2, p. 22). The only change was that Mr. Carroll had responsibility for a different area of the store. (*Id.*). Because Office Depot returned Mr. Carroll to an equivalent position with equivalent pay and benefits, Mr. Carroll cannot establish an interference claim under the FMLA.

### D. Mr. Carroll's Motion to Strike

The Court did not consider the declaration of Stacey Monteleone in ruling on Office Depot's motion for summary judgment. Therefore, Mr. Carroll's motion to strike is moot.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Office Depot's motion for summary judgment. The Court will enter a final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 17, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE